UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

OSMARA ZELAYA-MAIRENA,                                                              Petitioner,

v.                                                                          Civil Action No. 4:25-cv-173-DJH

SAMUEL OLSON, Field Office Director,
Chicago Field Office, U.S. Immigration and
Customs Enforcement, and JASON
WOOSLEY, Jailer, Grayson County
Detention Center,                                                                   Respondents.

\* \* \* \* \*

**<u>MEMORANDUM AND ORDER</u>**

Petitioner Osmara Zelaya-Mairena, a noncitizen currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending removal proceedings. Zelaya-Mairena asserts that her detention by immigration authorities violates the Immigration and Nationality Act (INA) and Due Process Clause of the Fifth Amendment. (Docket No. 1) The Court granted the parties' joint motion to forgo a show-cause hearing given the absence of a factual dispute. (D.N. 8) The United States, on behalf of Respondent Samuel Olson, moves to dismiss for lack of subject-matter jurisdiction in response to the Court's show-cause order. (D.N. 9) Zelaya-Mairena opposes the motion. (D.N. 11) After careful consideration, the Court will deny the motion to dismiss and grant the petition for the reasons explained below.

**I.**

According to her petition, Zelaya-Mairena is a "national and citizen of Venezuela."[1] (D.N. 1, PageID.5 ¶ 24) She "entered the United States on December 5, 2022," was arrested by U.S.

---

[1] Notwithstanding the parties' agreement that there is no factual dispute, the record is unclear as to Zelaya-Mairena's citizenship. While her habeas petition states that she is a citizen of Venezuela (*see, e.g.*, D.N. 1, PageID.5 ¶ 24), her immigration documents state that she is a native and citizen

1

Border Patrol, and was subsequently released on conditional parole. (*See id.*, PageID.1 ¶ 3; D.N. 9-3, PageID.55) On June 27, 2025, Zelaya-Mairena was again arrested by immigration authorities during a scheduled appointment at the Indianapolis U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) office. (D.N. 9-3, PageID.55) She was issued a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1) at that time. (D.N. 9-4, PageID.58) One month later, she was issued a Notice to Appear (NTA) charging her under § 1182(a)(7)(A)(i)(I) as an immigrant who was "not in possession of a valid unexpired immigrant visa . . . or other valid entry document" and under 8 U.S.C. § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*See* D.N. 9-2, PageID.50 ("[Y]ou are subject to removal . . . pursuant to . . . [§] 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act . . . [and §] 212(a)(6)(A)(i) . . . .")) The July 2025 NTA vacated her June 2025 § 1225(b)(1) order and scheduled her to appear before an immigration judge on August 7, 2025. (*Id.* (marking the "[s]ection 235(b)(1) order [as] vacated pursuant to . . . 8CFR 208.30")) Zelaya-Mairena then challenged her custody status and was denied bond before an immigration judge on August 14, 2025.[2] (D.N. 9-5, PageID.61)

Zelaya-Mairena has no criminal history. (D.N. 9-3, PageID.55) She states that she "was working, paying her taxes, and providing for her family" prior to her arrest. (D.N. 1, PageID.6

---

of Nicaragua (*see, e.g.*, D.N. 9-2, PageID.50 ("You are a native of Nicaragua and a citizen of NICARAGUA[.]")).

[2] In May 2025, the Board of Immigration Appeals (BIA) decided *Matter of Q. Li*, 29 I. & N. Dec. 66, 67–69 (B.I.A. 2025), which held that noncitizens arrested and detained while arriving in the United States, even if later conditionally paroled, are "applicant[s] for admission" pursuant to § 1225(b)(2)(A) and are thus "ineligible for release on bond." Though the immigration judge's order in this case does not provide further reasoning for the denial of bond beyond stating that Zelaya-Mairena is "[b]ond [i]neligible" (D.N. 9-5), the judge would have been bound by *Matter of Q. Li* to make this determination.

¶ 32) Zelaya-Mairena is currently detained at the Grayson County Detention Center in Leitchfield, Kentucky. (*See* D.N. 1, PageID.3 ¶ 14) She seeks a writ of habeas corpus against Chicago ICE Field Office Director Samuel Olson and Grayson County Jailer Jason Woosley.[3] (*See generally* D.N. 1) Zelaya-Mairena requests that the Court order her immediate release. (D.N. 1, PageID.7) Respondents move to dismiss for lack of jurisdiction and ask, in the alternative, that the Court deny Zelaya-Mairena's petition. (D.N. 9, PageID.24) Specifically, Respondents argue that (1) the Court lacks jurisdiction to hear the habeas petition; (2) Zelaya-Mairena's detention is lawful under § 1225(b)(2); (3) her detention does not violate due process; and (4) the remedy of release is not appropriate "prior to [an] immigration judge entertaining a bond hearing." (*See* D.N. 9, PageID.29–46)

## II.

**A.    Jurisdiction**

Federal courts have jurisdiction to grant a writ of habeas corpus to an individual "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). This jurisdiction includes habeas corpus challenges to the legality of a noncitizen's detention. *See Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[3] Zelaya-Mairena also alleges a violation of the Fourth Amendment. (D.N. 1, PageID.6 ¶ 36) In light of the Court's conclusion that Respondents violated her due process rights, the Court need not analyze the Fourth Amendment allegation. *See, e.g.*, *Padilla-Ugsha v. Ladwig*, No. 2:25-CV-03045-TLP-CGC, 2025 WL 3638007, at *8 (W.D. Tenn. Dec. 15, 2025) ("Since the Court agrees with Petitioner's arguments that Respondent has detained him under the wrong provision of the INA and that his detention without a bond hearing violates his procedural due process rights, the Court need not address the sparsely argued Fourth Amendment claim."); *Esperanza v. Francis*, No. 25-CV-8727, 2025 WL 3513983, at *9 n.4 (S.D.N.Y. Dec. 8, 2025) ("Having found that [Petitioner]'s rights under the Fifth Amendment were violated when the Government detained him . . . , the Court does not reach his alternative arguments that his detention violated the Fourth Amendment or the INA."); *Perez v. Moniz*, No. 25-CV-13779-FDS, 2025 WL 3653846, at *2 (D. Mass. Dec. 17, 2025) (declining to reach claims under Fourth Amendment and Administrative Procedure Act after finding petitioner was entitled to bond hearing).

Although the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) (citing *Zadvydas*, 533 U.S. at 688).

Respondents argue that the Court's jurisdiction to hear Zelaya-Mairena's claims is limited under 8 U.S.C. § 1252(g) and § 1252(b)(9).[4] (*See* D.N. 9, PageID.25, 29) Section 1252(g) prohibits federal courts from hearing claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The Court previously considered and rejected this argument as to § 1252(g) in *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *2–3 (W.D. Ky. Nov. 4, 2025). There, the Court observed that § 1252(g)'s jurisdictional bar is "narrow" and limited to the three actions listed in that provision: commencing proceedings, adjudicating cases, and executing removal orders. *See id.* at *2 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999)). Like the petitioner in *Alonso*, Zelaya-Mairena asks the Court to address constitutional violations and review her detention without the opportunity for a meaningful bond hearing rather than "the removal proceedings themselves" (*see* D.N. 11, PageID.65), which is not prohibited under § 1252(g). 2025 WL 3083920, at *2–3; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("[W]e read the language [in § 1252(g)] to refer to just those three specific actions themselves." (citing *Reno*, 525 U.S. at 482–83)).

Respondents also contend that subsection (b)(9) deprives the Court of jurisdiction because it bars claims challenging the decision to detain. (*See* D.N. 9, PageID.29) Further, they argue that

---

[4] Respondents raise § 1252(g) only in passing. (*See* D.N. 9, PageID.25)

4

Zelaya-Mairena's "legal questions" for the Court arise from actions to remove her from the United States. (*Id.*) Section 1252(b) states that

> [w]ith respect to review of an order of removal . . . the following requirements apply:
>
> . . . .
>
> (9) Consolidation of questions for judicial review
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision . . . , to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). As with § 1252(g), the Court rejects Respondents' argument that the "legal basis for detaining in the first place" is challenged by Zelaya-Mairena. (*See* D.N. 9, PageID.29) And § 1252(b)(9) applies only "[w]ith respect to review of an order of removal." 8 U.S.C. § 1252(b). The Court thus concludes that it has jurisdiction over Zelaya-Mairena's claims. *See Alonso*, 2025 WL 3083920, at *2–3; *Singh v. Lewis*, No. 4:25-CV-133-DJH, 2025 WL 3298080, at *2–4 (W.D. Ky. Nov. 26, 2025).

**B.   Immigration and Nationality Act**

Zelaya-Mairena asserts that her detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226.[5] (*See* D.N. 1, PageID.6 ¶ 37) Respondents argue that Zelaya-Mairena is

---

[5] Zelaya-Mairena's specific argument as to the applicability of § 1225(b) is somewhat convoluted. (*See* D.N. 11, PageID.67–68 (asserting that "[§] 1225(B)(2) does not compel mandatory detention"; "the parties agree" that "as an arriving alien, the Petitioner is subject to mandatory detention per [§] 1225(a) and [§] 1225(b)"; "Petitioner [is not identified] as an Arriving Alien in the NTA")) Having recently addressed several cases involving similarly situated habeas petitioners, the Court finds that Zelaya-Mairena is detained under § 1226. *See, e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837 (W.D. Ky. Nov. 20, 2025).

5

"an applicant for admission" and that therefore, "8 U.S.C. § 1225(b) governs [her] detention."[6] (D.N. 9, PageID.30) Respondents' argument as to the applicability of § 1225 over § 1226 is nearly identical to the argument made in *Alonso*, 2025 WL 3083920, at *4–8.[7] *See also Singh*, 2025 WL 3298080 (same argument). The Court thus summarizes and incorporates by reference its reasoning and determination from *Alonso*.[8] There, the Court relied on the language and context of § 1225 and § 1226 in concluding that the petitioner was an applicant for admission without "seeking admission" as defined under § 1225(b)(2)(A) because he had resided in the United States for an extended period. *See Alonso*, 2025 WL 3083920, at *5, *7. The Court further found that because the petitioner was "arrested and detained pending a decision on whether [he was] to be removed from the United States," *id.* at *5 (quoting § 1226(a)), he was detained under § 1226(a) and was therefore entitled to a bond hearing, *id.* at *8.[9]

While the petitioner in *Alonso* had been residing in the United States for more than a decade, *see id.* at *7, and Zelaya-Mairena has been present here for around three years (D.N. 1,

---

[6] The Court acknowledges Respondents' discussion of recent district-court decisions that have reached contrary conclusions as to the meaning of the phrase "seeking admission" and the applicability of § 1225(b). (*See* D.N. 9, PageID.26–27) In this case, the Court bases its conclusions on a careful consideration of the most up-to-date caselaw.

[7] Respondents also argue that the Court should afford *Skidmore* deference to the BIA's decision in *In re Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (*See* D.N. 9, PageID.40–42) The Court addressed an identical argument in *Singh v. Lewis*, No. 4:25-CV-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025) ("[T]he Court will not afford *Skidmore* deference to *In re Yajure Hurtado*."). The Court's reasoning in *Singh* is equally applicable here.

[8] As to statutory interpretation and the significance of the Laken Riley Act specifically, Respondents expound the reasonings of several recent decisions that are not binding on this Court. (*See, e.g.*, D.N. 9, PageID.36–37) "The Court is not surprised that as more cases are resolved across the country that the district courts are not in full agreement." *Edahi v. Lewis*, No. 4:25-CV-129-RGJ, 2025 WL 3301053, at *13 (W.D. Ky. Nov. 26, 2025). "But still the plain language text and rules of statutory interpretation dictate the outcome." *Id.*; *compare id.* at *9–13 (examining contrary caselaw), *with* D.N. 9, PageID.32–40.

[9] Like Zelaya-Mairena, the petitioner in *Alonso* had previously been denied bond by an immigration judge who found that he was ineligible. 2025 WL 3083920, at *1.

PageID.1 ¶ 3), other district courts have similarly found § 1225 inapplicable where petitioners had resided in the United States a comparable or shorter length of time. *See, e.g.*, *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) (around three years); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025) (two years); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (over a year). Zelaya-Mairena's prior interaction with immigration authorities in December 2022 and subsequent release do not bar such a finding. *See, e.g.*, *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, *1, *5 (W.D. Ky. Oct. 3, 2025); *Orellana v. Noem*, No. 4:25-CV-112-RGJ, 2025 WL 3006763, *1, *5 (W.D. Ky. Oct. 27, 2025).

Consistent with *Alonso* and caselaw from across the country addressing the same issue, the Court concludes that Zelaya-Mairena is detained under § 1226(a) rather than § 1225(b)(2) and is entitled to a bond hearing in accordance with § 1226(a). *Alonso*, 2025 WL 3083920, at *7; *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025).

**C.    Due Process**

Zelaya-Mairena asserts that her detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.6 ¶ 35) Respondents contest this assertion, arguing that Zelaya-Mairena has been given all the due process that is required for detention under § 1225(b). (D.N. 9, PageID.42) But as discussed above, Zelaya-Mairena is detained under § 1226, not § 1225. Therefore, Respondents' argument on the due process required for § 1225(b) detainees is irrelevant.[10]

---

[10] To the extent that Respondents rely on the due-process analysis in *Rojas v. Olson*, which involved an automatic stay and a finding that the petitioner was detained under § 1225, *see* No. 25-cv-1437-bhl, 2025 WL 3033967, at *54–61 (E.D. Wis. Oct. 30, 2025), the findings of the *Rojas* court are not binding here and contradict prior decisions of this Court involving identical automatic stays, *see, e.g.*, *Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025).

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted). The Court applies the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether civil detention violates due process. *See Alonso*, 2025 WL 3083920, at *8 (citing *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025)). Under that test, the Court must weigh three factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Mathews*, 424 U.S. at 335).

Here, the three *Mathews* factors each support granting Zelaya-Mairena a hearing. Like the petitioners in *Barrera* and other cases recently before the Court, Zelaya-Mairena "has a significant private interest in not being detained." *Barrera*, 2025 WL 2690565, at *6; *see also Alonso*, 2025 WL 3083920, at *8. And "the risk of erroneously depriving [Zelaya-Mairena] of [her] freedom is high if the [immigration judge] fails to assess [her] risk of flight and dangerousness." *Lopez-Campos*, 2025 WL 2496379, at *9; *see also* 8 C.F.R. §1236.1(c)(8), (d)(1). Finally, a "routine bond hearing" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 2025 WL 2829511, at *15. Zelaya-Mairena's lack of criminal history further diminishes the United States' interest. *See Guerra v. Woosley*, No. 4:25-CV-119-RGJ, 2025 WL 3046187, at *5 (W.D. Ky. Oct. 31, 2025) (citing *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025)). The Court thus finds that Zelaya-Mairena's

detention without a bond hearing violates due process. *See Alonso*, 2025 WL 3083920, at *8; *Guerra*, 2025 WL 3046187, at *5; *Barrera*, 2025 WL 2690565, at *7; *Lopez-Campos*, 2025 WL 2496379, at *9–10.

## D.     Release as a Remedy

Finally, Respondents argue that even if the Court finds that Zelaya-Mairena's detention falls under § 1226, release is not an appropriate remedy. (*See* D.N. 9, PageID.44–46) The Court considered the same arguments in *Salinas*, 2025 WL 3243837, at *4–5, where it noted that "district courts, including this Court, [had] previously ordered both immediate release and bond hearings for habeas petitioners detained under § 1226." *Id.* at *4 (citations omitted). Like the petitioner in *Salinas*, Zelaya-Mairena was released on conditional parole under § 1226 prior to the detention at issue. She has likewise "been denied the opportunity to pursue the process provided under § 1226(a) and its accompanying regulations[:] [she] has not received the chance for a bond hearing on the merits." *Id.* (citations omitted); *see also Maldonado v. Baker*, No. CV 25-3084-TDC, 2025 WL 2968042, at *11 (D. Md. Oct. 21, 2025) (ordering petitioner's immediate release after he was denied a bond hearing under § 1226(a)). Moreover, the Court found it proper to order a bond hearing before an immigration judge because the judge would "decide whether detention is appropriate based on the applicable regulations and a variety of factors identified by the BIA." *Salinas*, 2025 WL 3243837, at *5 (citations omitted). The Court will thus order Zelaya-Mairena's immediate release and that she be provided a bond hearing prior to any re-detention.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

9

(1)  Zelaya-Mairena's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. The United States is **DIRECTED** to release Zelaya-Mairena from custody immediately and, if she is arrested and re-detained, provide her with a bond hearing before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a). The United States **SHALL** certify compliance with the Court's Order by a filing on the docket. While release should be immediate, notice of the release may be delayed until **Monday, December 29, 2025**, due to the intervening holiday.

(2)  Respondents' motion to dismiss (D.N. 9) is **DENIED**.

(3)  Upon receipt of the notice of compliance, this matter will be **CLOSED**.

December 23, 2025

David J. Hale, Chief Judge
United States District Court